UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JAMES DOXEY ET AL.** | **CASE NO. 2:21-CV-00825** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AEGIS SECURITY INSURANCE CO.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment [docs. 9, 10], filed at the court's direction by the parties to this action on their dispute over coverage for plaintiff's hurricane damages. The dispute arises from the anti-concurrent causation clause in defendant's policy. Both motions are opposed and are now ripe for review.

## I.
### BACKGROUND

This suit arises from damages sustained to plaintiff's home by Hurricane Laura. At the time the storm made landfall on August 27, 2020, plaintiff's home in Cameron Parish, Louisiana, was covered by a manufactured home insurance policy issued by defendant Aegis Security Insurance Company ("Aegis"). *See* doc. 9, att. 4. The policy provides various forms of property coverage. *Id.* at 8–9. At the beginning of the policy's list of exclusions, however, the Anti-Concurrent Causation Clause ("ACC") states: "We do not pay for loss to the types of property covered under this policy caused by any of the following. Such loss is excluded regardless of any other cause or event contributing

concurrently or in any sequence to the loss." *Id.* at 11. The exclusions include coverage for damage "caused by, contributed to or aggravated by" flooding. *Id.* at 13.

After the storm, plaintiff submitted a claim to Aegis for the property damage he had allegedly sustained as a result of the storm's winds. Aegis denied coverage. Doc. 10, att. 4. Plaintiff then filed suit for breach of insurance contract. Doc. 1. The parties have now filed cross-motions for summary judgment over the coverage dispute. Docs. 9, 10. Aegis maintains that the ACC excludes coverage in this matter because the covered structures were damaged by wind but then completely displaced and destroyed by the storm surge. Plaintiff contends that, under Louisiana law, an ACC does not exclude coverage when the exempt cause occurs after the covered peril. He also asserts that there is a genuine dispute as to the role the storm surge played in the home's damages.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code

art. 2046). When the terms are ambiguous, however, that ambiguity must be construed against the insurer and in favor of coverage. *Id.* at 589–90. The contract must also be interpreted as a whole, with each provision reviewed in light of the others. *Calcasieu Par. Sch. Bd. v. Miller*, 92 So.3d 1200, 1202 (La. Ct. App. 3d Cir. 2012).

The Fifth Circuit has held that ACCs like the one described above are not ambiguous, and may properly exclude coverage for damages caused by a combination of an excluded peril and a non-excluded peril. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429–31 (5th Cir. 2007).[1] Such clauses are not precluded from operation by Louisiana statutory law, case law, or public policy. *Cameron Par. Sch. Bd. v. RSUI Indem. Co.*, 620 F.Supp.2d 772, 780 (W.D. La. 2008). The defendant has the burden of showing that an exclusion applies, by a preponderance of the evidence. *Hartenstein v. State Farm Fire & Cas. Co.*, 2008 WL 11355008, at *3 (E.D. La. June 11, 2008). The burden then shifts to the insured "to prove that the damage is within an exception to the exclusion, *i.e.*, [] the amount of segregable damage which was caused by a peril covered under the policy." *Id.*

In support of its motion Aegis has provided a "Hurricane Damage Assessment" prepared by Crawford Engineering, LLC. Based on observations, weather data, and surveys of neighboring property, the report concludes that "it is more probable than not" that the

---

[1] *Leonard* involved an *Erie* guess made under Mississippi law, from which the Mississippi Supreme Court subsequently departed by holding that such clauses only validly extended where the excluded peril was "concurrent" to the covered peril rather than occurring "in any sequence." *See Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, 612 F.3d 383, 387 n. 1 (5th Cir. 2010) (citing *Corban v. United Svcs. Auto. Ass'n*, 20 So.3d 601, 615–16 (Miss. 2009)). However, *Leonard* and its progeny "live on in the Circuit's consideration of ACC clauses arising under Louisiana law." *Arcement v. GeoVera Specialty Ins. Svcs.*, 2015 WL 151325, at *5 (E.D. La. Jan. 12, 2015). One Louisiana appellate court has followed the Mississippi Supreme Court, holding that an ACC cannot exclude coverage where the excluded peril occurs subsequent to the covered peril. *Id.* (citing *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 123 So.3d 787 (La. Ct. App. 4th Cir. 2013)). No other Louisiana court has followed suit, however, and the court finds insufficient cause for departing from *Leonard* as applied by the federal courts in this state.

4

covered structures were first damaged by winds and then "completely displaced and destroyed by the estimated 16.6 foot storm surge (7.6 feet above the property's concrete slab of the mobile home and approximately 12 to 13 feet above the concrete slab of the detached barn/shop)." Doc. 9, att. 4, p. 56.

Plaintiff, in turn, relies on an affidavit from engineer Charles Norman, who also inspected the site and researched the storm's impact on the area. Doc. 10, att. 5. Norman notes reports of maximum sustained winds of 150 miles per hour, with higher gusts, and that the home was "subjected to nearly one-and-half hours of 140 mph winds prior to the peak of the storm surge." *Id.* at ¶ 8. He further notes that "[t]here is no direct physical evidence that the water level reached the lowest structural member of the house." *Id.* at ¶ 9. He opines:

> More likely than not, hurricane force winds and heavy rain along with a drop in barometric pressure created openings in the roof including lifted decking, windows and extreme rain fall intensity and caused water to intrude and migrate through roof openings into the interior of the house. It is more likely than not that hurricane force winds removed large sections of the roof before the water surge, along with the decking and opened the entire interior of the home. This was followed by the wind forces causing the collapse of the main frame wood structure to the ground. Therefore, the hurricane wind is the efficient and proximate cause of the total loss. Following the failure of the structure from the wind, the storm surge moved across the ground and washed the building components away.
> It is more likely than not that the interior of the house was moisture [damaged] from failed roof, failed doors and windows. The moisture damaged interior finish of the house was damaged to the [extent] that the entire interior was ruined prior to the arrival of the storm surge.

*Id.* at ¶¶ 5, 6.

Aegis insists that Norman's findings are insufficient to overcome summary judgment, because his statements regarding the water level are conclusory and

contradictory—he opines that the storm surge washed away the remnants of the structures but then asserts that there is no evidence that it reached the lowest level of the residence, and he cites no data on the height of the structure vis-à-vis the storm surge. However, Norman has also opined that the wind force was sufficient to total all of the structures before the storm surge arrived, leaving no damage left for the excluded peril to inflict. Aegis provides no basis for striking his affidavit. The conflicting opinions preclude summary judgment on the ACC's applicability, as they leave open the question of whether the storm surge in any way caused or contributed to the loss. *See, e.g.*, *Ledet v. United States*, 2018 WL 2010024, at *3 (E.D. La. Apr. 30, 2018) ("Where there are competing expert opinions, the Court finds that there is a genuine issue of material fact precluding summary judgment.") Accordingly, the coverage dispute must proceed to trial.

## IV.
### CONCLUSION

For the reasons stated above, both Motions for Summary Judgment [docs. 9, 10] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 9th day of June, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**